IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

BOBBIE MCNEILL, SR.,

    Plaintiff,

    v.

OFFICER WEAVER, et al.,

    Defendants.

CIVIL NO.: WDQ-10-0029

\* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Bobbie McNeill, Jr. ("McNeill") sued Detective Adrienne Grant and Officers Brendan Duker, Mark Grelak, Nicholas Mabry, and Louis Weaver[1] (collectively, the "defendants") for injuries arising out of his January 16, 2009 arrest. On August 28, 2012, McNeill died of causes unrelated to this case. See ECF No. 106. His father and personal representative of the estate Bobbie McNeill, Sr. ("McNeill, Sr.") is the current plaintiff.

From November 13 to November 15, 2012, the Court held a bench trial.[2] On March 8, and 11, 2013, the parties submitted

---

[1] McNeill also named Officer Tabitha Hays and the Baltimore County Police Department as defendants, but they have been dismissed. See ECF Nos. 9, 138.

[2] The parties submitted motions in limine before the trial. ECF Nos. 122, 125. At trial, the Court resolved these motions through its rulings on the parties' objections to the relevant evidence. Accordingly, for the reasons stated in open court, the motions in limine will be granted in part and denied in part.

proposed findings of facts.[3] ECF No. 143, 145. For the following reasons the Court finds the defendants not liable on all counts.

I. Findings of Fact

As required by Fed. R. Civ. P. 52(a), the Court makes the following findings of fact:

1. On January 16, 2009, then-Officer Grant was in her patrol car observing "a known drug house" on Yorkway in Dundalk, Baltimore County, Maryland. Day 2 Tr. 19:9-21.[4]

2. A green Lincoln came to the house; the passenger left the car, entered the house, and shortly thereafter reentered the car. Day 2 Tr. 20:13-25.

3. The Lincoln started down an alley toward Mornington Road; Grant followed, attempting to "run the tags" of the car. Day 2 Tr. 20:17, 21:5-8.

---

[3] Also pending is McNeill, Sr.'s motion to supplement the trial record. ECF No. 144. At trial, McNeill, Sr. sought to introduce evidence of Seglinski's recent arrest and pending criminal trial. See Day 3 Tr. 12. The defendants objected to the admission of uncertified copies, and the Court left the record open for the submission of certified copies. Day 3 Tr. 14.
On March 11, 2013, McNeill, Sr. moved to supplement the record with certified copies of the documents in Seglinski's case. ECF No. 144. The defendants have not opposed the motion. The motion will be granted.

[4] The Court will cite the transcripts by day of the bench trial.

2

4.  The Lincoln turned left on Mornington, a one-way street, and proceeded in the wrong direction. Day 2 Tr. 21:8-9, 15.

5.  With Grant following, the Lincoln turned right onto Merritt Boulevard, and then right on Peninsula Expressway. Day 2 Tr. 22:6-7.

6.  After the Lincoln turned on Peninsula Expressway, Grant turned on her lights and siren and began a traffic stop. Day 2 Tr. 22:6-9.

7.  Grant recognized McNeill and was aware that his driver's license was suspended. Day 2 Tr. 22:22-24.

8.  When Grant asked McNeill for his license, he said he did not have one. Day 2 Tr. 22:25-23:1.

9.  McNeill then told Grant how to spell his name and his date of birth. Day 2 Tr. 23:1-3.

10. Seglinski identified himself, and Grant recognized him as the subject of a separate investigation by Mabry. Day 2 Tr. 23:11-19.

11. Because she believed that she was going to detain Seglinski for Mabry, and McNeill likely did not have a license, Grant asked Dispatch for backup. Day 2 Tr. 23:22-24:2.

12. Grant ran a standard license and warrant check on McNeill through Dispatch. *See* Day 2 Tr. 24:16-20.

3

13. Dispatch told Grant that McNeill was "99" meaning that he had an open warrant. Day 2 Tr. 25:2-3.

14. Grant's lapel microphone permitted other officers to hear responses from Dispatch. Day 2 Tr. 25:14-16.

15. McNeill heard that he was "99" and quickly drove away. *See* Day 2 Tr. 25:17-18.

16. Grelak arrived as McNeill fled. *See* Day 2 Tr. 25:21-24, 202:10-14.

17. Grant told Dispatch that McNeill "had taken off." Day 2 Tr. 26:1.

18. Grant and Grelak chased McNeill in their patrol vehicles. *See* Day 2 Tr. 29:7, 203:13.

19. Duker, who had been at the precinct when he heard Grant's call, placed his car at the intersection of Moorgate and Ormand Roads to determine whether McNeill was heading in his direction. Day 2 Tr. 230:7-23.

20. Duker observed McNeill's car heading directly toward him and accelerated to avoid being struck. Day 2 Tr. 231:10-12.

21. McNeill turned into an alley off Kavanagh Street, got out of the car, and fled on foot. Day 2 Tr. 30:10-12.

22. As McNeill was leaving his car and beginning to run, he twisted his knee, tearing his anterior cruciate

ligament ("ACL") and meniscus. *See* Day 1 Tr. 165:1-17; Def. Ex. 32, 33.

23. McNeill managed to run nearly 80 feet from his car. *See* Day 1 Tr. 34:11; Day 2 Tr. 205:19-20.

24. Grant had seen McNeill leave his car and chased him down the alley, yelling that McNeill was under arrest. *See* Day 2 Tr. 91:24-25.

25. Grant managed to grab McNeill's clothing. Day 2 Tr. 92:8-9.

26. McNeill attempted to evade Grant and Grelak, who had just arrived, and grabbed a nearby fence.[5] *See* Day 2 Tr. 92:23-25, 207:3-4.

27. Grant, on McNeill's left, tried to remove him from the fence; Grelak and Mabry, who had also just arrived, tried to remove McNeill from the right. *See* Day 2 Tr. 95:14-21, 207:12-16, 216:9-15.

28. Unknown to the other officers, Weaver joined the attempt to remove McNeil from the fence. *See* Day 2 Tr. 225:7-8.

29. Almost immediately after Weaver arrived, McNeill fell off the fence; it is unclear whether the officers

---

[5] McNeill's flight was not atypical for the area. As Grant stated, "It's Dundalk. People fight. They run from us all the time . . . ." Day 2 Tr. 90:23-24.

5

removed him or he let go of the fence. See Day 2 Tr. 96:4-7, 207:17-18, 217:4-7, 225:18-20.

30. McNeill, Grant, Grelak, Mabry, and Weaver all fell to the ground onto McNeill.[6] See Day 2 Tr. 96:9, 207:17-18, 217:4-7, 225:19.

31. When he fell, McNeill's head hit the ground, causing significant abrasions and lacerations around his eye. See Day 2 Tr. 96:18-19, 208:17-19, 217:8-13; Pl. Ex. 1a-1e; Def. Ex. 5.1, 42, 43.

32. Duker arrived and saw the officers and McNeill in a pile. Day 2 Tr. 232:7-9.

33. Because McNeill continued to struggle and flail, Duker placed his knee on McNeill's upper back to restrain him. Day 2 Tr. 232:12-15.

34. Weaver handcuffed McNeill. See Day 2 Tr. 63:24-64:12; Def. Ex. 9.

35. Weaver began to walk McNeill out of the alley but "handed him off" to Hays to place him in Grant's patrol car. Day 2 Tr. 226:5-9, 242:1-3, 245:2.

36. McNeill resisted being put into the car and hit his head on its frame, sustaining a laceration on his

---

[6] However, McNeill was on top of Grant's hand. Day 2 Tr. 96:10.

right scalp. See Day 1 Tr. 32:22; Day 2 Tr. 245:15-19; Def. Ex. 42, 43.

37. Because of his aggressiveness, McNeill was ultimately transported to the precinct in a police wagon[7] by another officer. See Day 2 Tr. 59:14-60:1, 246:16-247:2; Def. Ex. 9.

38. On his way to the precinct, McNeill complained of chest pains and was taken to Franklin Square Hospital for evaluation. E.g., Def. Ex. 9.

39. From his flight and arrest, McNeill sustained (a) lacerations and abrasions around his eye, (b) a laceration on his right scalp, and (c) a torn ACL and meniscus; these were caused by respectively (a) his fall from the fence, (b) his contact with the vehicle door, and (c) his stumble at the beginning of his flight on foot. See Findings of Fact 22, 31, 36.

40. The defendants did not punch, kick, or otherwise intentionally injure McNeill. See, e.g., Day 2 Tr. 106:16-23, 107:22-108:5, 220:5-16, 227:12-21, 235:3-19.

41. From her attempt to subdue McNeill, Grant sustained injuries to her wrist and arm. See Day 2 Tr. 92:20-22

---

[7] The prisoner transport wagon has features that are far less destructible than the inside of a patrol car. See Day 2 Tr. 58:20-59:2

7

42. McNeill scratched Hays on her hand. Day 2 Tr. 243:4-7; Def. Ex. 5.44.

43. From this incident, McNeill was charged with (1) first degree assault on Duker,[8] (2) second degree assault on Grant,[9] (3) second degree assault on Hays,[10] (4) second degree assault on a law enforcement officer (Hays),[11] (5) second degree assault on a law enforcement officer (Grant),[12] (6) reckless driving,[13] (7) driving while suspended,[14] (8) fleeing and eluding,[15] (9) fleeing on foot,[16] (10) resisting arrest,[17] and (11) reckless endangerment.[18] Def. Ex. 2.

---

[8] In violation of Md. Code Ann., Crim. Law § 3-202.

[9] In violation of Md. Code Ann., Crim. Law § 3-203.

[10] In violation of Md. Code Ann., Crim. Law § 3-203.

[11] In violation of Md. Code Ann., Crim. Law § 3-203(c)(2).

[12] In violation of Md. Code Ann., Crim. Law § 3-203(c)(2).

[13] In violation of Md. Code Ann., Transp. § 21-901.1(a).

[14] In violation of Md. Code Ann., Transp. § 16-303(c).

[15] In violation of Md. Code Ann., Transp. § 21-904(b).

[16] In violation of Md. Code Ann., Transp. § 21-904(c).

[17] In violation of Md. Code Ann., Crim. Law § 9-408(b).

[18] In violation of Md. Code Ann., Crim. Law § 3-204(a)(1).

44. Pursuant to a plea agreement, McNeill pled guilty to a single count of second degree assault on Duker.[19] See Def. Ex. 1, 2.

45. On February 10, 2009, McNeill filed Internal Affairs complaints against the defendants for brutality. Def. Ex. 6.

46. Corporal Raymond Mullaney investigated the complaints, and concluded that they were unfounded[20]; a sergeant, lieutenant, and major concurred in Mullaney's findings. Day 2 Tr. 191:6-192:19, 194:6-11; see Def. Ex. 6.

II. Conclusions of Law

In the Third Amended Complaint, McNeill, Sr. asserts three claims: (1) excessive force under 42 U.S.C. § 1983, (2) Maryland common law battery, and (3) a survival action under Md. Code Ann., Cts. & Jud. Proc. § 6-401 and Est. & Trusts § 7-401. ECF No. 120.

A. Excessive Force

"Section 1983 gives injured plaintiffs a cause of action when they have been deprived of federal rights under color of

---

[19] When asked "Are you pleading guilty because you are guilty or because you believe it's in your best interests to do so?" McNeill responded "Yes, sir." Def. Ex. 1 at 9.

[20] According to Mullaney, "unfounded" "means that there wasn't enough evidence to indicate that the complaint happened the way it was reported." Day 2 Tr. 193:23-194:1.

state law . . . ." *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 521 n.2 (4th Cir. 2000). The Fourth Amendment protects individuals from "seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). Whether "an officer has used excessive force is analyzed under a standard of objective reasonableness." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The Court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Factors for this analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed." *Henry*, 652 F.3d at 531.

The defendants did not use excessive force against McNeill. The injuries to his ACL, meniscus, and scalp were caused by his flight from the police and his resistance to being put in Grant's car. *See* Findings of Fact 39-40. Although how and to what extent is unclear, the defendants were at least partially responsible for McNeill's fall near the fence and the resulting

injury to the area around his right eye. Even if they pulled McNeill off the fence, however, their force was not excessive. McNeill had led the police on a car chase, a foot chase, and was actively resisting arrest. *See, e.g.*, Findings of Fact 15, 26, 33. The defendants applied force to remove McNeill from the fence. The injury to his face was caused by the incidental angle of his fall to the ground and the officers falling on top of him. Considering the circumstances of McNeill's injuries and the arrest, the defendants' force was neither unreasonable nor excessive.[21] *See Graham*, 490 U.S. at 397. McNeill, Sr. has not proven this claim by a preponderance of the evidence.

B. Battery

Under Maryland common law, battery is "an offensive, non-consensual touching--the unlawful application of force to the person of another." *Katsenelenbogen v. Katsenelenbogen*, 775 A.2d 1249, 1255 n.1 (Md. 2001) (internal quotation marks omitted). "False imprisonment, false arrest, and assault and battery (*when the force used is not excessive*) can only occur when there is no legal authority or justification for the arresting officer's actions." *Williams v. Prince George's Cnty.*, 685 A.2d 884, 898 (Md. Ct. Spec. App. 1996) (emphasis added). "[T]he privilege that a law enforcement officer

---

[21] Because the Court finds that the defendants' force was not excessive, it need not reach their assertion of qualified immunity. *See* ECF No. 143 at 51-52.

11

possesses to commit a battery in the course of a legally justified arrest extends only to the use of reasonable force, not excessive force. To the extent that the officer uses excessive force in effectuating an arrest, the privilege is lost."[22] *French v. Hines*, 957 A.2d 1000, 1037 (Md. Ct. Spec. App. 2008).

The excessive force inquiry is the same as under the Fourth Amendment. *See Richardson v. McGriff*, 762 A.2d 48, 46 (Md. 2000); *French*, 957 A.2d at 1037. As discussed above, the defendants' use of force was not excessive. Accordingly, the

---

[22] The defendants appear to assert state governmental *immunity*--as opposed to a privilege for the tort--to defeat McNeill's battery claim. See ECF No. 143 (*quoting* Md. Pattern Jury Instruction Civil 15:5). As the commentary to the instruction makes clear, "[t]he 'absence of malice' defense discussed in this instruction is available to Maryland state personnel but not to other law enforcement officers in the state." Md. Pattern Jury Instruction Civil 15:5 note. Baltimore County police officers are not state employees for application of the defense. See Md. Code Ann., State Gov't § 12-101(a); *Lee v. Cline*, 863 A.2d 297 (2004); *cf*. Md. Code Ann., State Gov't § 12-101(a)(6) (naming county *sheriffs* and deputies state employees). Rather, they are subject to the Local Government Tort Claims Act ("LGTCA"), which does not provide immunity, but does grant legal defense and indemnification. See Md. Code Ann., Cts. & Jud. Proc. § 5-302(b); *Hines v. French*, 852 A.2d 1047, 1066 (Md. Ct. Spec. App. 2004) (analyzing Baltimore County police's liability under the LGTCA); *see also Prince George's Cnty. v. Longtin*, 19 A.2d 859 (Md. 2011) (applying LGTCA to tort claims against Prince George's County police); *Balt. Police Dep't v. Cherkes*, 780 A.2d 410 (Md. Ct. Spec. App. 2001) (holding that LGTCA and not state governmental immunity applies even to Baltimore *City* officers, even though the Baltimore *City* Police Department is uniquely a state agency).

battery is privileged only if the arrest was not legally justified. *See French*, 957 A.2d at 1037.

There is no question that the arrest was justified. Grant had been told of McNeill's arrest warrant and saw him commit numerous traffic violations and attempt to evade the police. *See, e.g.*, Findings of Fact 4, 15, 21, 43. Accordingly, she had probable cause to arrest him without a warrant. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Because McNeill was legally arrested and the defendants did not use excessive force, the defendants' touching of McNeill was privileged. *See French*, 957 A.2d at 1037. The defendants are not liable for battery.

C.  Survival Action

McNeill, Sr. also asserts a survival action under Md. Code Ann., Cts. & Jud. Proc. § 6-401(a), which generally permits legal claims to survive a party's death,[23] and Est. & Trusts § 7-401(y) that permits personal representatives to prosecute claims on behalf of the estate. ECF No. 120 ¶¶ 22-24. Because McNeill, Sr. has not proven the excessive force or battery claims, *see supra*, the defendants are also not liable on this claim.

---

[23] Slander is an exception to this rule. Md. Code Ann., Cts. & Jud. Proc. § 6-401(b).

III. Conclusion

For the reasons stated above, the Court finds the defendants not liable on all counts.

___8/8/13___  
Date

___[signature]___  
William D. Quarles, Jr.
United States District Judge